23-3504 Western Missouri United States v. Clint Schram Ms. Carlisle? How's that in terms of sound? That's good.  I know you know how to run that machine, so. I don't know if it's as low as it'll go. Actually, that would not be a bad idea. Thank you. May it please the Court, I'm here today on behalf of Clint Schram, and I'd first like to address the sufficiency of the evidence argument in Grounds 1 and 2 in the brief. In Count 1 of the indictment, Mr. Schram was charged with maintaining a child exploitation enterprise. In Counts 3, 5, 7, and 9, he was charged with advertisement of child pornography. And both of the statutes in connection with those cases require the existence of an actual victim, an actual child who was involved. Exploitation requires more than one, and advertisement just requires one. But the government in this case did a great job of proving that Mr. Schram administered four websites that facilitated the access to child pornography, and that he gave notice of a visual depiction, which is the first element of the advertisement. But what they never did was to show that any of the images involved were images of actual children. I think we've said that juries are capable of discerning reality in these kinds of cases, and so I'm wondering if those cases aren't binding on us. Well, I think the most recent one of those is Figueroa Lugo, which was in 2015. And first of all, I noticed that all of this Court's cases have said the jury can figure this out, but in all of those cases, there has been evidence presented about the issue. So I would argue, first of all, that I think that statement, which I agree has been made by the Court several times, is essentially dictum, number one. You mean evidence as to the fact that these were real children? What kind of evidence? Well, what kinds of evidence have been presented? Yes. In Figueroa Lugo, there was an expert who testified. I've done investigations into child pornography. I can tell you that these images here, these specific images, are images of a person who's been identified as a victim. And in some other cases, victims have testified. So it's certainly not a situation where there's no possibility of showing evidence of actual victims. There was one case, I think, where a pediatrician testified about it, but in any event, in all of those cases, evidence was presented. And in this case, I mean, the thing that's, I think, particularly disturbing about this case is the government, in their brief, says that they had witnesses that could have testified about that, but the defense didn't seem to be bringing it up, so they didn't put them on. And when it got to be time for the sentencing judge to decide how much restitution Mr. Schramm should pay, they presented evidence about several victims of whose images, several, you know, real people whose child pornography images had been distributed on the Internet. So it's not like there wasn't any evidence available. This is, it's not, you say it's required. It's not an element, though, right? Like, this is not an element that goes to the jury, correct? Yes, it is. That they're actual children? I believe the case law proves that more than one minor victim, I think, shows, you know, is a requirement of an actual person, not — I see. So you're saying it's baked into — It's baked into — Baked into the victim. Yes. So I think the case law acknowledges that. Well, and the reason I ask it is it just, it's an interesting procedural place we find ourselves in, where nobody brings up something during the trial, and then we're at a position of like, oh, are we supposed to review this as the jury would have? It's sort of a cattywampus kind of place to be in at this point. Well, the government did argue that you should review for plain error. And is that your position? No, I think, first of all, I think that because trial counsel, in his motion for judgment of acquittal, said the issue is whether you've met the requirements of the advertisement statute, he said that generally, I think under your Moore case, the Moore case, that's a general objection to sufficiency, which entitles us to plenary review. But frankly, even if this were a plain error case, the other thing that I think is really important, well, there are two things that I think are really important here about this. First of all, the last time the court made that statement about how jurors can figure this out was in 2015. Things have changed on the Internet since 2015 quite dramatically, and the proliferation of images that look like something that they're not is, you know, is absolutely, you know, is dramatic. And so it's clear, and I presented in my brief some citations to how ordinary people can create fake images on the Internet. And also I want to say that the importance of having an actual victim is, you know, what we've learned is that the children to whom this happens suffer real damages and harm. So it's not like it doesn't matter in terms of, you know, of child, from the consumer of child pornography, it doesn't probably matter, but for the kids who get their pictures taken and put on the Internet, it clearly does. So I think that's why. Is this something you think that should be presented as sort of a sub-question to juries, or is that, I'm kind of thinking maybe for the next case, or maybe in the context of this case, if it's something that the jury needs to be answering directly? Well, I will say that the government in this case argued specifically, oh, yes, we've shown you more than one victim. And they did that by reference to saying, you know, we showed this picture of this little girl and this little girl. So I think they understood that it was an argument and brought it up. I don't know that there is any, I mean, I think in the jury instruction, and I can pull it off if I would, mentions, you know, more than one minor victim for exploitation and a depiction of a minor victim in the advertisement one. So I think the jury is instructed that they need to find there was a minor victim. The other thing I wanted to make sure to mention is that in this case, the judge decided that, and I mean kind of with the agreement of the parties, that these images were going to be presented to the jury for three seconds each. And that was to protect the jury because they're nasty. And, you know, I don't think anybody wants to look at them. But to say, well, a juror who probably doesn't know a great deal, may or may not know a great deal personally about real and fake images, in three seconds can tell that this is a real person and not a fabricated image? I mean, I think that's a pretty large stretch. And even if this is a point error case, I think the facts of this case are different than figuring a logo because of that, and they're different because it's not 2015 anymore. Does it matter that, didn't the parties agree to the three seconds? Well, we're about to talk about exactly what the parties agreed to. But, yeah, the parties agreed, the defense objected to all the images under 403. And I'm going to talk about that in a minute. But the parties certainly agreed that if they were going to be shown, they'd be shown for three seconds. But that doesn't mean that they also, that the defense also agreed, hey, you don't have to present any evidence that they're real people. If they had shown them for three seconds and put on their witnesses who could say, yes, they were real people, then, you know, that would have solved the problem. And that was certainly within the government's control, and the government decided not to do it. So I think, you know, letting them do it here is really giving them a free pass that they shouldn't have. And I understand that it's hard to do because these are horrible cases. But, you know, it's one of those cases where I'd ask that hard cases not make bad law. So I think that the court didn't, that the jury did not have adequate evidence to make that conclusion because the government didn't present it and that Mr. Schramm is entitled to judgment of acquittal on counts 1, 3, 5, 7, and 9. You cite some material of a social science variety, I guess you could call it, that has to do with whether artificial intelligence is not now capable of producing images that are indistinguishable from real people. Isn't that right? Right. Is that the kind of thing we can take into account as a court of appeals? I think so. I mean, it's publicly available and, you know, it's been cited to you. And I think you can consider it in the same way that in cases about, you know, things like mentally retarded people getting the death penalty, the court considered evidence about what we now know about mental retardation. I think it's squarely in front of the court. There's a lot of other stuff out there is what I was about to say, which isn't particularly helpful to you and perhaps more sophisticated. So I'm just wondering if, can we also do our own Internet research? I mean, how does that work? If suddenly we find an opinion, we have something about combating, you know, combats between social scientists and you've had no opportunity to respond. Where does this end? Well, I mean, I think in this, I guess I would say, I do think it would be somewhat, it would be, I think there's some cases in which courts have taken judicial notice of things that weren't in the brief. So that, you know, I'm not sure that that's unknown. I guess I would say that in this case, we, you know, I put it in the brief and the government didn't come back and say, well, no. What the government said was you shouldn't consider it. They didn't say, well, no, this isn't right. We have our own social scientists and we have our own articles that say anything that's, anything that you see on the Internet, you can obviously tell if it's real or not. So. I guess we'd have to make some judgment at the very least about the reliability of the method and the prominence of the place where it was published and the rest of that. I just don't know how to do that. But anyway, go ahead. But I guess the only other thing I'd say about that is that, I mean, when the court said jurors can tell, you know, what were they relying on? They were just kind of relying on common sense. And I'm just saying that if that was common sense in 2015, it's not anymore. But the other thing that I did want to take a minute about before I get to the end of my time here is the proliferation of images that were shown to the jury. What the government did was to show, I think, around seven bits of images from the website. And then they showed a bunch of images that they had found on Mr. Schramm's computers. I mean, they may have come off of the Internet, but there wasn't any suggestion that he had used them. And as I discovered when I reviewed this, there were actually more than that. There were about 30 of them. And I don't think there was any need for those images to have been shown to the jury. They didn't prove what the government was trying to do, and he wasn't charged with possession of child pornography. So I'd ask for a reversal on that ground as well. And I'll reserve the balance of my time. Thank you. Thank you. Ms. Carlisle, we note that you were appointed under the Criminal Justice Act. And once again, the court appreciates your service. May it please the court, Sangeeta Rao, on behalf of the United States, I'd like to turn straight to the sufficiency issue as to whether the images involved actual minors. The evidence is sufficient under any standard of review. Based on five buckets of evidence. First, they're sufficient based just on the images themselves. This court has already decided that. In Koch, which we cited in our brief and the defendant did not address in their reply brief before the court this morning, this court said the evidence was sufficient in a case where, quote, the images themselves were the only evidence presented by the government on the issue. That really should decide this case. But there are four other buckets of evidence. Second, the defendant's labeling system. It permitted the jury to infer that the images they saw depicted real children. His authoritative guide to tags. What system? He had a labeling system on website A with an authoritative guide to tags that had a specific CGI label. And it was defined as computer generated image, cartoon, or manga. But none of the images that the government introduced into evidence had such a CGI tag, allowed the jury to conclude that the images of the children were real. For the third bucket of evidence are Schramm's admissions. He referred to his websites as a child abuse website. And he talked about sharing pictures of specific victims. He told his staff members, this is at transcript 168, do you like what you see? All these girls were raped and molested and abused by pedophiles just like you and I. How do you feel sharing these pics? We are pedophiles. This is hardcore. He said that about all these girls? Is that what he said? He says all these girls. All these girls. I'm quoting. Yes. How do you feel about sharing these pics? We are pedophiles. This is hardcore child abuse. It ain't Disneyland. There's more. He related a specific story about a girl who was molested by her mom's boyfriend. And he commented about how much the website users liked to share those photos. Was that one that was introduced into evidence? No. Was it tied to anything that was in evidence at this case? We admitted five exhibits that were tied to things that defended himself posted on the website. The two quotes I just gave you aren't tied to anything specific, but the jury could rely on it.  That's his statement. Right. Neither of those quotes are specifically tied to a specific image. Those two quotes I read. But there is another one. So there's a 20 video collection of a young girl being raped. It's GX16D. And it's described in our brief. It was shown on websites A, C, and D by the defendant. He posted a link to this 20 video collection. He did talk in his interview about that 20 video collection. He admitted, that girl was engaged in sexual activity and commented, I just call that having sex with her daddy. That's a GX609 and 610. Government exhibit 609 and 610. It indicated that the people involved were real and had a real familial relationship. It's something that the jury could use as an inference, taking it all together. That was the third bucket of evidence. The fourth is multiple witnesses testified that users posted links to, quote, child pornography or, quote, child sexual abuse material. In Robertson, from this court, this court rejected a sufficiency challenge, where the jury saw the images. Agents testified to the images as being child pornography. And defendant admitted that he had downloaded child pornography. Those three things are all here. And that's another reason why the evidence is sufficient. In the fifth bucket, defense counsel conceded in closing, that everything the government said was factually true and accurate, except for the element of advertising. That's a transcript 571. While the government had argued that it had to prove that the images were a visual depiction of an actual minor engaging in sexually explicit conduct, it had argued that it had proved more than one child victim. This is a transcript 554 and 566. And defense counsel repeatedly admitted that the images at issue were child pornography and that, quote, at transcript 575, the defendant did upload some comments with a link in them where someone could look at a child pornography picture. If you put that all together, the evidence was abundantly clear that it was sufficient. On just the overall state of technology, there's no record of evidence that technology is so advanced right now that juries can no longer rely on the images. As recently as 2019, and this defense conduct was 2019 to 2020, a circuit court, the Fifth Circuit, in Pollack, said the juries are able to distinguish between real images and virtual images. To combat that, Pollack, P-A-W-L-A-K, that's a 2019 case. To combat that evidence and this court's prior cases, like Koch, like Vig, like Cain, defendant would need to provide expert testimony or at least develop some kind of factual record in the district court that failed to do so. I mean, the burden is on you to show that they're real children. The burden is on us, but we have met that burden with those five buckets of evidence, especially with this court's background case law, that the images themselves are enough. If the defendant is going to challenge, try to get this court to overturn that background case law, there needs to be factual development in the record, and that didn't happen here. Another thing that the defendant is ignoring is that videos would be much harder to fake than a photo, and there was evidence of videos here. They weren't shown to the jury because the defendants didn't want that. That would be so, defendants don't want that kind of evidence to really show the graphic nature of what happened to these children displayed, but there was evidence of that. There was the 20 video collection for one example. The defendant in his reply brief for the first time cites articles from 2019 and 2020 about creating fake photos. In the opening brief, they were citing articles from appellate briefing. Again, this court can't consider evidence that's brought up for the first time in a reply brief, let alone not in the district court. For all these reasons, the evidence was more than sufficient. Can I just come back? You cited, I thought I heard Hutch as a case that wasn't responded to, and I'm looking at your authorities. Is that offered? Yes. Koch, it's 625 F3rd at 479. We cited Koch and Cain and Bigg. Oh, okay. I guess I would say Koch or K-O-C-H. K-O-C-H, and that's the one where it's not dicta. Got it. For the rest of the issues, we will rely on our brief unless the court has any questions. We would ask the court to affirm. Very good. Thank you.  For rebuttal, Ms. Garland. Okay. Let me talk about the five categories. I think we've actually talked enough about the images. I'm not going to talk about that. We clearly disagree about that. In terms of the labeling, the labeling system was clearly intended to distinguish between things that look like cartoons and things that look like people. It wasn't, you know, it was kind of a matter of taste of the pornography viewer, and I don't think it really has any probative value in telling you whether the images of people were real or not. Mr. Schramm certainly made statements about what was in the images, but there was no showing that Mr. Schramm had any way of knowing if they were real or not. He's just talking about what he sees, and so I don't think that really helps the government much either. Defense counsel similarly is talking about, you know, what all this looks like. That may, you know, tip this court into more of a plain error review posture, but I don't think it, whatever defense counsel says isn't evidence anyway. And then the government suggests that in order to show that they weren't real people, the defense somehow has to present evidence of technology, but as you pointed out, Judge Arnold, the defense doesn't have the burden to prove that they were real people, and the government really didn't do anything to prove that they were real people. So that's interesting. So you're saying that what amounts assumed for the moment to a hypothetical, you're saying that what amounts to an admission by counsel during closing argument is not binding? Is that what you're saying? Yeah, I think I am saying that. I mean, I think if counsel were to, you know, if counsel were to admit that, admits to an element as to which there's no evidence, I don't think that that excuses the government. And, you know, the suggestion that, you know, that counsel could have solved this problem by having the entire video shown to the jury, again, it's the government's burden to prove that they're real people, and if the government had wanted strongly to do that by showing the whole videos, they could have asked to do that, and maybe the judge would have let them, but it certainly wasn't the defendant's burden to do that. So I think that, again, the government didn't present evidence that it easily could have presented, and this court should find the evidence insufficient. Thank you. Very good. Thank you. Counsel, the case has been well-briefed and well-argued. Argument helps clarify things, and we'll take it under advisement.